In re Samuel Houston ARNOLD, III, and Rebecca Ann Arnold, Debtors.

Bankruptcy No. 96–30014.

United States Bankruptcy Court,
W.D. Missouri.

March 13, 1996.

Danny R. Nelson, Fitzsimmons, Schroeder, Nelson & Reynolds, Springfield, MO, for debtors.

George D. Nichols, Lamar, MO, for creditor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtors moved this Court to quash an administrative freeze on their bank account with Creditor First National Bank of Lamar ("FNB") and to release funds which debtors claim are exempt. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For

the reasons set forth below, debtors' motion will be GRANTED.

Debtors filed a Chapter 7 bankruptcy petition on January 8, 1996. At the time of filing debtor Samuel Arnold, a physician, was employed by Freeman Hospital and his wages in the amount of $3,284.67 were deposited directly into his account at FNB on January 12, 1996. The account contained $162.84 just prior to the deposit. It is undisputed that the deposit four days post-petition was for wages that were earned pre-petition.

Debtors executed an unsecured Promissory Note with FNB in the original principal amount of $10,000.00 on October 6, 1995. They also executed an unsecured Promissory Note in the original principal amount of $5,000.00 on October 20, 1995. Debtors had not repaid said Notes prior to the bankruptcy filing. FNB, thus, placed an administrative freeze on the entire balance of $3,447.51 contained in debtors' checking account on January 12, 1996, pending determination of FNB's right of setoff.

Debtors' attorney contacted FNB on January 12, 1996, and requested the release of $1,500.00 as exempt property pursuant to Missouri Law. FNB released $1,500.00 of the administratively frozen funds that same day, leaving a balance in dispute of $1,947.51. Debtors then filed a motion to quash the administrative freeze and for the release of the remaining funds as exempt property. FNB countered with a response and with a motion for relief from the automatic stay. A hearing was conducted on February 22, 1996, at which both the attorney for FNB and the attorney for debtors made oral arguments. A discrepancy in the schedules as to the total number of children in debtors' household was noted at the hearing, and debtors' attorney supplied the Court with correct information on February 27, 1996. No evidence other than the Court's file and the oral argument was admitted. Debtors' attorney informed the Court that funds on deposit with Mercantile Bank of Western Missouri in the amount of $450.00, which were also the subject of debtors' motion to quash the administrative freeze, will be released as exempt property.

FNB makes two separate arguments as to its right to set off the funds. First, FNB claims that the funds are not exempt as wages pursuant to Missouri's Revised Statutes § 525.030 because they lost their character as wages when deposited into the checking account. Second, FNB argues debtors have already used up their head of household exemption with the release of $1,500.00, therefore, the remaining funds are not exempt pursuant to Missouri's Revised Statutes § 513.440.

Samuel Houston Arnold, III, has two children under the age of eighteen from a previous marriage or marriages. Rebecca Ann Arnold has three children under the age of eighteen from two previous marriages. One of Dr. Arnold's children lives with him and the other child resides with her mother. All three of Mrs. Arnold's children reside in the home. Debtors' schedules reflect that Dr. Arnold is $21,000.00 in arrears on the child support payments he is ordered to make to his former spouse. Doc. # 4, schedule F. Mrs. Arnold was awarded child support for her three children from both of her former husbands in the total amount of $385.00 per month, but she claims she has received no support for at least two or three years. As a result, Dr. Arnold's wages have been used to support Mrs. Arnold's children. Debtors are claiming an exemption of $2,100.00 pursuant to Missouri's head of household exemption statute. Doc. # 4, schedule C: Mo.Stat.Ann. § 513.440 (Supp.1996). Debtors are also claiming that all of the wages deposited on January 12, 1996, are exempt pursuant to section 525.030 of Missouri's Revised Statutes.

■ Before I reach the issue of set-off, I must first deal with the issue of whether the funds are exempt. It seems clear from case law that, even if FNB has a right of setoff against nonexempt property of the debtors, it has no right to set off its debt against exempt assets. *State of Missouri, to the Use of John Codding v. Finn,* 8 Mo.App. 261, 264–65 (1880); *In re Cole,* 104 B.R. 736, 739 (Bankr.D.Md.1989); *In re Wilde,* 85 B.R. 147, 149 (Bankr.D.N.M.1988).

## DISCUSSION

■ A brief discussion of Missouri's exemption statutes is in order. The Bankruptcy Code (the "Code") permits a state to opt

out of the Federal bankruptcy exemption scheme. 11 U.S.C. § 522(b)(1). The State of Missouri has exercised this option. Mo.Stat. Ann. § 513.427 (Supp.1996). Section 513.427 provides that:

> Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).

*Id.* Property in Missouri is exempt if it is not subject to attachment and execution. *In re Mitchell,* 73 B.R. 93, 94 (Bankr.E.D.Mo. 1987). Property of the bankruptcy estate which is "effectively exempt from attachment and execution under Missouri law may be allowed as an exemption in bankruptcy." *Id.*

The Revised Statutes of Missouri provide a non-exclusive list of exemptions. *In re Sanders,* 69 B.R. 569, 572 (Bankr. E.D.Mo.1987). *See generally* Mo.Stat.Ann. §§ 513.430 through 513.530 and 525.030(2). Specifically, Missouri provides for the exemption of wages as follows:

> 2. The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings of any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five percentum, or (b) the amount by which his aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time the earnings are payable, or, (c) if the employee is the head of a family and a resident of this state, ten percentum, whichever is less.... The term "earnings" as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise....

Mo.Stat.Ann. § 525.030(2) (Supp.1996). The parties agree that the funds in the amount of $3,284.67 deposited into debtors' checking account at FNB on January 12, 1996, are Samuel Arnold's "earnings" from Freeman Hospital. FNB argues, however, that once the wages were deposited into a checking account they became commingled funds subject to the claims of creditors and, as such, lost their exempt status. There are two flaws in FNB's argument. First, debtor's attorney stated that Dr. Arnold attempted to intercept the direct deposit and have his earnings delivered to him in person, but Freeman Hospital failed to honor that request. It elevates form over substance to claim that the check in Dr. Arnold's hand was wages, but the check in his checking account was not. Second, at the time of the bankruptcy filing, debtor's wages had been earned, but not deposited into the checking account. Dr. Arnold was entitled to his wages on the petition date. Their status as exempt property attached at that time, therefore, they were deposited as exempt post-petition. In *In re Smith,* 124 B.R. 787, 789 (Bankr. W.D.Mo.1991), this Court concluded that under section 525.030(2) of Missouri's Revised Statutes, a debtor is entitled to exempt all but ten percent of wages payable to him. Under section 513.427 of Missouri's Revised Statutes, a debtor is entitled to exempt this same amount from the bankruptcy estate. *Id.* *See also In re Sanders,* 69 B.R. 569, 573 (Bankr.E.D.Mo.1987). At the time of the bankruptcy filing, $3,284.67 represented wages payable to Dr. Arnold, therefore, ninety percent, or $2956.20, of said wages were exempt. The remaining $328.47, along with any other funds in debtors' bank accounts became subject to the claims of creditors but for the bankruptcy filing and the applicability of other exemptions.

In addition to the exemption for wages provided in Missouri's Revised Statutes, there are further exemptions for cash to be found in Sections 513.430 and 513.440. Section 513.430 provides:

> The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

(3) Any other property of any kind, not to exceed in value four hundred dollars in the aggregate.

Mo.Stat.Ann. § 513.430(3) (Supp.1996). This exemption is called the "wild card" exemption and entitles Rebecca and Samuel Arnold to an exemption of $800.00 to be applied to any of their property. Pursuant to their schedules, debtors have applied this exemption to cash and to the remaining balances in their bank accounts at both FNB and Mercantile Bank of Western Missouri. Doc. # 4, Schedule C.

 Section 513.440 provides:

Each head of a family may select and hold, exempt from execution, any other property, real personal, or mixed, or debts and wages, not exceeding in value the amount of eight hundred fifty dollars plus two hundred fifty dollars for each of such person's unmarried dependent children under the age of eighteen years, except ten percent of any debt, income, salary, or wages due such head of a family.

Mo.Stat.Ann. § 513.440 (Supp.1996). This "head of household" exemption is limited to one person in each family. *In re Sartain,* 61 B.R. 1007, 1009 (Bankr.W.D.Mo.1986); *In re Crippen,* 36 B.R. 7, 9 (Bankr.E.D.Mo.1983). In *Crippen* the Court held that the debtor was not entitled to the head of household exemption for herself and her three children by a previous marriage when her non-debtor spouse provided all the support for the children. 36 B.R. at 9. In the case at hand Mrs. Arnold is not employed. Dr. Arnold, therefore, claims the head of household exemption in the amount of $850.00 plus a $250.00 exemption for each of five children. No one disputes his claim to the $850.00. An issue arises, however, as to the number of Dr. Arnold's unmarried dependent children under the age of eighteen. The head of household exemption statute allows each head of household a $250.00 exemption for "such person's unmarried dependent children." Mo.Stat.Ann. § 513.440 (Supp.1996). Dr. Arnold has two children of his own for whom he is legally responsible. He is admittedly in arrears in his child support for his noncustodial child, but it is undisputed that said child is his dependent. Mrs. Arnold, on the other hand, is the parent of three children who live in the home. Though said

children are not Dr. Arnold's unmarried dependent children, he has claimed a $250.00 exemption for each of them. Older Missouri cases hold that for a relative other than the biological father to qualify as head of the family he must be the financial supporter of the family and the manager of its household affairs. *Ridenour–Baker Grocery Co. v. Monroe,* 142 Mo. 165, 43 S.W. 633, 634 (Mo. 1897) (where the Court found that a head of household is one who controls, supervises, and manages the affairs about the house, not necessarily a father or husband); *Wade v. Jones,* 20 Mo. 75, 77 (1854) (where the Court held "one, who with his sister, keeps house for his younger brother and sister, thus, partly contributing to their support, is the head of a family under the exemption laws, though neither a husband nor a father, and though the children be not wholly dependent upon him"); *Duncan v. Frank,* 8 Mo.App. 286, 289 (1880) (where a brother supporting a widowed sister and her four small children was deemed head of household as to the four children). These cases deal with situations where relatives, other than parents, have assumed the moral obligation to support certain children. Mrs. Arnold's former husbands are legally responsible for her three children. If they were meeting their obligations they would be entitled to a head of household exemption for their children. *Murray v. Zuke,* 408 F.2d 483, 487 (8th Cir.1969). Mrs. Arnold, however, informed this Court that her former husbands provide no support for her children. No party in interest challenged the statement that Dr. Arnold is providing a home and support for Mrs. Arnold's three children by previous marriages. Absent any proof to the contrary, I find that Dr. Arnold is entitled to an exemption of $750.00 for Mrs. Arnold's dependent children.

 As to his own child, who is not living with him, Dr. Arnold is not entitled to claim an exemption. The Eighth Circuit has held that a noncustodial father who is not meeting his support obligations on the date of filing is not entitled to the exemption. *Conklin v. Gasaway,* 468 F.2d 752, 753–54 (8th Cir.1972), *cert. den.,* 412 U.S. 951, 93 S.Ct. 3018, 37 L.Ed.2d 1004 (1973). *See also McCarter v. Murrell (In re Murrell),* 588

F.2d 1207, 1209 (8th Cir.1978) (where the Court held that a debtor is not entitled to a head of household exemption if he or she does not provide a home for the children and does not assume a significant share of the responsibility for the every day care of the children). While exemption statutes are enacted for the relief of the debtor, and should be liberally construed, *Murray v. Zuke*, 408 F.2d at 486, I am bound by the rather explicit language in the head of household statute. Therefore, I find that Dr. Arnold is not entitled to an exemption in the amount of $250.00 for his non-custodial child because he was not fulfilling his legal responsibility toward that support at the time of the bankruptcy filing. He may, of course, claim an exemption of $250.00 for his custodial child. In sum, Dr. Arnold may claim the head of household exemption for himself, as well as for the four children living with him, for a total of $1,850.00.

For all of the above reasons I find that Dr. Arnold may exempt $2,956.20 as earnings pursuant to section 525.030 of Missouri's revised Statutes. Additionally, debtors have an $800.00 wild card exemption as to any remaining funds in their accounts at FNB and Mercantile Bank of Western Missouri pursuant to section 513.430(3) of Missouri's Revised Statutes. Finally, Dr. Arnold may claim a head of household exemption in the amount of $1,850.00, pursuant to section 513.440 of Missouri's Revised Statutes, to exempt any personal property not covered by other exemption statutes. Debtors will be given ten days in which to amend their exemption schedules, in accordance with this Memorandum Opinion, to designate the property claimed as exempt.

There are no non-exempt funds available, pursuant to debtors' schedules, to be set off against the unsecured debt of FNB. I, therefore, will not reach the issue of whether FNB has such a right. As such, debtors' motion to quash the administrative freeze will be granted.

An Order in accordance with this Memorandum Opinion will be entered this date.